UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

===============================================

DERRICK HAMILTON,

               Plaintiff,

    v.                              **DECISION AND ORDER**
                                         03-CV-527S

JAMES CONWAY; RANDY JAMES;
JEFFREY BEA; POLAK, Lieutenant;
DEAN BAUER; BAKER, Sergeant;
MARKOWSKI, Sergeant; R. PIERCE;
STEPHEN LASKOWSKI; CATHY TURTON;
BRUCE BARTEN; and SCOTT CLAIR,

               Defendants

===============================================

## I. INTRODUCTION

Plaintiff is a prisoner who was incarcerated at the Attica Correctional Facility ("Attica") during the events relevant to this case.   Plaintiff raises numerous claims under 42 U.S.C. § 1983 against Department of Corrections Services ("DOCS") officers and medical staff for alleged constitutional violations.

Presently before the Court are Plaintiff's Motions to Compel (Docket Nos. 41, 54),[1]

---

[1] Plaintiff filed the Affidavit of Derrick Hamilton with Appendix 1-5 (Docket No. 41) and a Reply (Docket No. 51) in support of his first Motion to Compel (Docket No. 41); and the Affidavit of Derrick Hamilton with Appendix 1-7 (Docket No. 54) in support of his second Motion to Compel (Docket No. 54). Defendants filed the Declaration of Darren Longo, Esq. with Exhibit A (Docket No. 45), the Declaration of Sandra Prusak with Exhibits A-C (Docket No. 46), and the Declaration of Catherine Wells (Docket No. 47) in opposition to Plaintiff's First Motion to Compel; and the Declaration of Darren Longo, Esq. (Docket No. 57) in opposition to Plaintiff's second Motion to Compel.

1

as well as competing Motions for Partial Summary Judgment.  (Docket Nos. 44, 50).[2] Plaintiff and Defendants move for summary judgment on Plaintiff's claims for cruel and unusual punishment (Count Three)[3], denial of right to practice religion and right to privacy (Count Five), and denial of recreation (Count Four).  Defendants additionally move for summary judgment on Plaintiff's claims for denial of medical treatment (Count One), denial of dental treatment (Count Two), and denial of mental health treatment (Count Six).[4]

For the following reasons, Plaintiff's Motions to Compel are denied.  Defendants' Motion for Partial Summary Judgment is granted in part and denied in part.  Plaintiff's Motion for Partial Summary Judgment is denied in its entirety.


## II. BACKGROUND

Plaintiff is an inmate in the New York DOCS and during the times relevant to this lawsuit was incarcerated at Attica.  While Plaintiff's claims span a wide range of incidents allegedly occurring at Attica, many of his claims flow from two occurrences.

The first occurrence relates to Plaintiff's medical condition.  Plaintiff has an enlarged

---

[2] Plaintiff filed the Declaration of Derrick Hamilton, a Statement of Undisputed Facts, and a Memorandum of Law with Appendix 1-11 (Docket No. 50) in Support of his Motion for Partial Summary Judgment (Docket No. 50). Defendants filed the Declaration of Darren Longo, Esq. with Exhibit A (Docket No. 45), a Statement of Undisputed Facts (Docket No. 48), and a Memorandum of Law (Docket No. 49) in support of its Motion for Partial Summary Judgment (Docket No. 44). Defendants filed a Response to Plaintiff's Statement of Undisputed Facts (Docket No. 58), the Declaration of Darren Longo, Esq. with Exhibits A-B (Docket No. 59), and a Memorandum of Law (Docket No. 60) in opposition to Plaintiff's Motion for Partial Summary Judgment.

[3] Neither Plaintiff nor Defendants move for summary judgment on Plaintiff's claims for excessive force or assault against Defendants Bauer and Pierce under Count Three.

[4] While Plaintiff expressly states that he is not moving for summary judgment on his claims for denial of medical and mental health treatment (Plaintiff's Declaration, Docket No. 50, ¶ 2), Plaintiff also raises arguments with respect to those claims.  This Court construes those arguments as opposition to Defendants' Motion for Partial Summary Judgment as to those claims.

prostrate and a urological condition known as Orchiditis that causes him to have an immediate urge to urinate and causes blood to flow from his penis if he fails to do so. (Plaintiff's Declaration, Docket No. 50, ¶¶ 11-12; Longo Declaration, Ex. A, Docket No. 45, 33:17 - 34:11). This condition started a chain of events beginning on June 14, 2003 that lead to several of Plaintiff's claims.

On June 14, 2003, Plaintiff noticed blood in his urine and notified Defendant Laskowski, a DOCS doctor.  Laskowski allegedly ignored Plaintiff.  Turton, a female DOCS nurse, offered to examine Plaintiff, but he declined to be examined by her purportedly because of his Muslim religious beliefs. (Amended Complaint, Docket No. 5, ¶¶ 23, 27, 33-36).

Thereafter, on June 15, 2003, Plaintiff's urological condition caused him to bleed from his penis and then be placed in a drug watch cell[5] for reasons that the parties dispute. Plaintiff alleges that Defendants placed him in the cell merely as punishment for his urological condition.  (Id. at ¶ 26).  Defendants allege that they placed Plaintiff in the cell because his visitor put her hands inside his shorts and, shortly thereafter, Defendants observed blood on Plaintiff's shorts.[6]  (Conway Interrogatory Response, Docket No. 20, ¶ 3; Bea Interrogatory Response, Docket No. 35, ¶¶ 5, 7, Ex. A).

Plaintiff claims that Defendants denied medical treatment while he was in the drug watch cell and that the cell was covered in feces.  (Amended Complaint, Docket No. 5, ¶

---

[5]  Defendants also refer to the drug watch cell as "the dry watch cell," "the special watch cell," and "the strip cell."

[6] Defendants conclusion that Plaintiff violated visiting room rules was later reversed in an Article 78 proceeding for reasons not disclosed on the record before this Court. (See Plaintiff's Motion for Partial Summary Judgment, Docket No. 50, Appendix 6).

26).  In addition,  Defendants Bauer and Pierce allegedly kicked Plaintiff and squeezed his penis and testicles, thereby further exacerbating his urological condition.  (Id. at ¶¶ 28, 42-43).

The second occurrence giving rise to several of Plaintiff's claims is his placement and confinement in the SHU.  After allegedly falsely testing positive for marijuana, Plaintiff was placed in the SHU for two years beginning in March 2002.[7]  (Plaintiff's Declaration, Docket No. 50, ¶ 24).   Plaintiff alleges that he was subjected to the constant banging and screaming of inmates and that the inmates threw feces into his cell.  Plaintiff alleges that Defendants failed to address conditions in the SHU and denied him mental health treatment when these conditions caused him mental illness.  (Amended Complaint, Docket No. 5, ¶¶ 20, 21, 56-60).

Plaintiff also raises numerous other claims that have no relation to each other or to the events described above, including claims challenging the enforcement of policies relating to recreation, bathroom use, and inmate monitoring. The facts relevant to those claims are detailed below.

Plaintiff raises § 1983 claims against Defendants for denial of medical (Count One), dental (Count Two), and mental health treatment (Count Six), as well as for various acts of cruel and unusual punishment (Count Three),[8] denial of recreation (Count Four), and

---

[7] Plaintiff's Amended Complaint does not provide a time for when these events allegedly took place.  The March 2002 date is from the Declaration in Support of Plaintiff's Motion for Partial Summary Judgment, ¶ 24.  Defendants challenge the accuracy of Plaintiff's assertions regarding the reasoning for his placement in the SHU, dates, and length of time spent in the SHU.  (See Defendant's Response to Plaintiff's Statement of Undisputed Fact, Docket No. 58; Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment, Docket No. 60, p. 6).

[8] Plaintiff asserts several distinct claims for cruel and unusual punishment under Count Three. In addition, this Court construes Plaintiff's allegations of denial of medical, dental, and mental health

4

denial of the right to practice religion and the right to privacy (Count Five).

## A.      Count One: Denial of Medical Treatment

To support his claims under Count One for deliberate indifference to his medical needs Plaintiff alleges that Defendants failed to treat two injuries.  First, Plaintiff alleges that on June 14 and June 15, 2003, Defendants Laskowski and Turton denied medical treatment for Plaintiff's urological condition. (Complaint, Docket No. 5, ¶ 23, 27, 33-36).  Second, Plaintiff alleges that Laskowski's refusal to refer Plaintiff to a specialist to have a lump on his chest examined constitutes deliberate indifference to his medical needs.  (Id. at ¶ 35).  Defendants move for summary judgment on these claims.

## B.      Count Two: Denial of Dental Treatment

Plaintiff's § 1983 claims against Defendants Bea, Conway, and James arise from their denial of dental treatment.  Bea, Conway, and James allegedly refused to provide Plaintiff with dental floss and refused to allow Plaintiff to have his teeth cleaned while he was in the SHU.  (Id. at ¶¶ 38-39).  Defendants move for summary judgment on this claim.

## C.      Count Three: Cruel and Unusual Punishment

Plaintiff raises three separate incidents under Count Three to support his claims for cruel and unusual punishment.  First, he alleges that on June 15, 2003, Defendants Bauer and Pierce kicked him and squeezed his penis and testicles, thereby exacerbating his urological condition.  (Id. at ¶¶ 28, 42-43).  Neither party moves for summary judgment as to this claim.

---

treatment as also stating § 1983 claims for cruel and unusual punishment under the Eighth Amendment. For simplicity and consistency, this Court will analyze all claims according to the count titles given by Plaintiff.

Second, Plaintiff alleges that Defendants Bauer, Bea, James, Markowski,[9] and Polak ignored Plaintiff's injuries and placed him in a drug watch cell for 48 hours because of his bleeding penis. (Id. at ¶ 43). Plaintiff further alleges that Defendants Bauer, Bea, Conway, James, and Polak left him in the drug watch cell after learning that his urological condition caused the bleeding. (Id. at ¶ 44). In addition, Plaintiff alleges that the drug watch cell was smeared in feces and that Defendants denied Plaintiff a toothbrush and water for bathing while in the cell. (Id. at ¶ 26).[10] Both parties move for summary judgment as to this claim.

Plaintiff's third claim under Count Three relates to Attica's bathroom policies as applied to Plaintiff. First, Plaintiff alleges that Defendants Bea, Conway, James, and Markowski violated § 1983 "by the failure to have a bathroom policy that allows adequate and immediate access to the urinal when needed by Plaintiff." (Id. at ¶ 45). Second, Plaintiff alleges that Defendants Bea, Conway, and James violated § 1983 by refusing to allow Plaintiff to use the bathroom in the first floor visiting area and requiring Plaintiff to wait for corrections officers from other floors to take plaintiff to use the bathroom. (Id. at ¶ 46). Plaintiff alleges that Defendants' adherence to these policies injured him because his urological condition required that he have immediate access to a bathroom. (Id. at ¶¶ 45,

---

[9] This Court notes that Markowski has never been served with a summons and complaint. As Plaintiff has not moved for an extension of time to effectuate service, all claims against Markowski can be dismissed for failure to comply with FED. R. CIV. P. 4(m). See Zapata v. City of New York, 502 F.3d 192, 199 (2d Cir. 2007) (affirming district court's dismissal of plaintiff's § 1983 claim for failure to ask for an extension of time for service within a reasonable time after the passing of the date for effectuation of service). However, even without this procedural flaw, all claims against Markowski are dismissed as without merit, as discussed below.

[10] Plaintiff raises the facts concerning the condition of the cell under the fact discussion of his Complaint and does not explicitly raise them as a claim under Count Three. This Court liberally construes these facts as stating a claim for cruel and unusual punishment relating to the claims alleged under Count Three.

46).   Defendants move for summary judgment on this claim.

**D.      Count Four: Denial of Recreation**

Plaintiff alleges that "Defendants Conway [and] Bea . . . violated Plaintiff['s] Constitutional Right to Outside exercise by allowing recreation to run between 7 A.M. and 8:30 A.M.[,] the same time that hot breakfast meals and the mail program [are] run."  (Id. at ¶ 48).   Plaintiff alleges that he is forced to choose between attending recreation and eating a hot meal or receiving his legal mail.  (Id. at ¶ 49, 50).   As a result, Plaintiff has allegedly skipped recreation for over ten months and suffered a decline in his health from the lack of exercise.  (Id. at ¶ 51).   Both parties move for summary judgment on these claims.

**E.      Count Five: Denial of Right to Religion and Right to Privacy**

Plaintiff raises two separate privacy claims under Count Five.  First, Plaintiff alleges that Defendants Bea, Conway, and James violated his right to privacy "by failing to provide shower curtains or removing the video camera from viewing the shower while plaintiff is naked."  (Id. at ¶ 53).   Second, Plaintiff alleges that Defendants Baker, Bea, James, and Stone "violated plaintiff's Constitutional right to privacy by designating the drug watch, dry cell room to be in a high traffic area and requiring plaintiff to defecate in front of inmates, staff, female employees and all sorts of hospital and mental health employees while naked in totality."  (Id. at ¶ 54).   Plaintiff alleges that being forced to expose his body to females violated his religious beliefs.  (Id. at ¶¶ 29, 53).   Both parties move for summary judgment on these claims.

**F.     Count Six: Mental Health**

Plaintiff raises claims against Defendant mental health workers Barten and Clair for deliberate indifference to his mental health problems, which allegedly included insomnia, paranoia, thoughts of harming himself and others, and inability to concentrate. (Id. at ¶ 21, 56). Plaintiff argues that Defendants were obligated to provide him with group counseling or treatment by a psychiatrist. (Id. at ¶ 57).

Plaintiff also raises claims against Defendants Barten, Bea, Clair, Conway, and James arising from conditions in the SHU. While in the SHU, Plaintiff allegedly suffered from a mental breakdown from having to listen to prolonged loud banging and screaming of mentally ill inmates and having feces thrown in his cell. Defendants allegedly refused to provide treatment to Plaintiff and failed to address conditions in the SHU. (Id. at ¶¶ 20. 58-60). The Defendants move for summary judgment on these claims.

## III. DISCUSSION

**A.     Motions to Compel**

This Court will first address Plaintiff's pending Motions to Compel (Docket Nos. 41, 54). On November 13, 2006, Plaintiff moved to compel, arguing that Defendant Bea failed to respond to a request for admissions and Defendants failed to produce a requested video log. (Docket No. 41). As noted by Defendants (Docket No. 45), Plaintiff made his request for the production of these documents after the close of discovery and this Court has not granted an extension on discovery. Furthermore, Defendants provided Plaintiff with answers to Bea's Interrogatories, as well as other documents describing the events

allegedly contained in the video log, such that Plaintiff's additional requests are not necessary for him to prosecute his claim. Accordingly, Plaintiff's November 13, 2006 Motion to Compel (Docket No. 41) is denied.

On December 26, 2006, Plaintiff again moved to compel arguing that Defendants had not provided a requested videotape to him. (Docket No. 54). Defendants' counsel thereafter submitted an affidavit attesting that the delay was due to confusion over administrative procedures for obtaining the videotape from Attica and that he had mailed the videotape to Plaintiff on January 10, 2007. (Docket No. 57). Therefore, Plaintiff's motion will be denied as moot because Defendants have provided the requested item. Plaintiff's request for $5,000 for "time, frustration and effort spent in litigation" is denied.

**B.   Motions for Partial Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).  A fact is "material" if it "might affect the outcome of the suit under governing law." Anderson, 477 U.S. at 248.  In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of

evidence supporting an essential element of the non-moving party's claim. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

At this stage, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  Thus, summary judgment is not appropriate if "there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Ford, 316 F.3d at 354.

When deciding a motion for summary judgment, a court must view the evidence and the inferences drawn from the evidence "in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970).   However, the party against whom summary judgment is sought "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

Civil liability is imposed under § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  *See* 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution.  *See* Graham v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (*quoting* Baker v. McCollan, 443

U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)).   Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged.   *See* Baker, 443 U.S. at 140.

Plaintiff's *pro se* Motion for Summary Judgment (Docket No. 50) contains numerous allegations unrelated to the claims asserted in his Amended Complaint.   (Docket No. 5). Plaintiff also moves for summary judgment on due process violations, which he failed to state in his Amended Complaint.   While this Court construes Plaintiff's Amended Complaint liberally, *see* Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972), this Court does not construe these new allegations as creating additional claims for which Plaintiff may move for summary judgment.   Additionally, as Plaintiff's Amended Complaint makes no assertions that can be construed as stating a claim for violation of due process, this Court will not consider such claim at summary judgment. Accordingly, this Court reviews the respective motions for summary judgment with respect to the claims asserted in Plaintiff's Amended Complaint.

Prison conditions and the treatment prisoners receive while incarcerated are subject to scrutiny under the Eighth Amendment.   *See* DeShaney v. Winnebago County Dept. of Social Svcs., 489 U.S. 189, 199-200, 109 S.Ct. 998, 1005-1006, 103 L.Ed.2d 249 (1989). The Supreme Court has recognized that a prisoner's claim that he was intentionally denied medical treatment is cognizable under the Eighth Amendment and § 1983:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical

> care or intentionally interfering with the treatment once prescribed.    Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.
> . . .
> In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.    It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment.

Estelle v. Gamble, 429 U.S. 97, 104, 106, 97 S.Ct. 285, 291, 292, 50 L.Ed.2d 25 (1976) (quotations and citations omitted).

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components--one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) (citing Hudson v. McMillian, 503 U.S. 1, 7-8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992); Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999)).

The subjective component "requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." Sims, 230 F.3d at 21 (citations omitted).    The objective component is "contextual and responsive to contemporary standards of decency." Id. (quoting Hudson, 503 U.S. at 8).

With respect to a claim of deliberate indifference to a serious medical need, a prisoner must also show that he suffered from a "sufficiently serious" medical condition, see Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), and that the defendants acted with a "sufficiently culpable state of mind." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).

12

> "An official acts with the requisite deliberate indifference when he 'knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"

Brown v. Picarelli, No. 96 Civ. 1222, 2003 WL 1906180, at *6 (S.D.N.Y. Apr. 15, 2003)

(quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811

(1994)).

### 1.    Count One: Denial of Medical Treatment

#### a.   *Plaintiff's Urological Condition*

In this case, Plaintiff provides no evidence other than his own assessment that his urological  condition was "sufficiently serious" to support a denial of medical treatment claim.  In addition, Plaintiff's own actions contradict his claim that his urological condition was sufficiently serious. Plaintiff stated at deposition:

> Q. We are still talking about June 14, 2003.  Anyone ever give you a diagnosis?
>
> A. Well, yes.
>
> Q. What was wrong?
>
> A. It was an enlarged prostrate and orchiditis.
>
> Q. Orchiditis?
>
> A. Yes. [A urologist] prescribed medication for it.
>
> Q. Was medication to be taken all the time or just until it stopped?
>
> A. I took it all the time.
>
> Q. So the medication didn't seem to be working?

> A. Well, there were times when I was not taking the
> medication. I'm not sure, so I don't say one day or the other.
> Right now I was going through things. I don't know if I was
> taking the medication when [the bleeding started on June 14].

(Longo Declaration, Ex. A, Docket No. 45, 33:17 - 34:11). Plaintiff also declined treatment

from Turton, a female DOCS nurse, on the basis that it violated his religious beliefs.

Plaintiff's failure to consistently take medication that would improve his condition and his

willingness to decline treatment from Turton[11] contradict his claim of having a sufficiently

serious medical condition requiring immediate treatment. In addition, Plaintiff received

medical treatment the following day (Turton Interrogatory Responses, Docket No. 19, ¶ 10)

and he submits no medical evidence of having experienced extreme pain or a decline in

his condition from the delay.

Plaintiff also has failed to provide evidence from which a reasonable jury could

conclude that Defendants had a "sufficiently culpable state of mind." *See* Hathaway, 37

F.3d at 66. Plaintiff admits that Turton offered to examine him, but that he declined

treatment for religious reasons. Plaintiff also previously received treatment and was

receiving medication for his condition at the time of these incidents. In addition, Plaintiff

received treatment for his condition the day after these incidents. Defendants willingness

to provide Plaintiff with treatment for his urological condition contradicts Plaintiff's claim that

---

[11] While Plaintiff argues that he is prohibited by Islamic Law from showing his penis to any female other than his spouse, Plaintiff's interpretation of Islamic Law is questionable. In a prior case, an Islamic scholar conceded that this tenet may be waived in emergency circumstances. *See* Rivera v. Smith, 63 N.Y.2d 501, 506, 472 N.E.2d 1015 (N.Y. 1984). However, even if Plaintiff's interpretation of Islamic Law is correct, Plaintiff cannot establish that Defendants were deliberately indifferent to serious medical needs or had a sufficiently culpable state of mind while at the same time admitting that Defendants offered treatment. Plaintiff also fails to establish a constitutional right to receive medical treatment from a male doctor. *See* Baker v. Welch, 2003 WL 22901051, *18 (S.D.N.Y. 2003) (noting in dicta that "[a] male prisoner has no constitutional right to be treated by a male doctor.").

Defendants were deliberately indifferent to his medical needs.  Because no reasonable jury could conclude that Defendants were deliberately indifferent to a sufficiently serious medical need, this Court grants summary judgment to Defendants with respect to Plaintiff's claims for denial of medical treatment for his urological condition.

### b.    Lump on Plaintiff's Chest

Plaintiff also provides no evidence that the lump in his chest was sufficiently serious to support a § 1983 claim.  While Laskowski refused to order a biopsy, Plaintiff did receive a mammogram.  The examiner noted that the "findings are not highly suggestive of breast malignancy."  (Wells Declaration, Docket No. 47, Ex A:000259).  This evidence contradicts Plaintiff's claim  that the lump was sufficiently serious to support a claim for denial of medical treatment.  Plaintiff's claim amounts to little more than a disagreement over the type of treatment he should have received.  As the Second Circuit has noted, "mere disagreement over the proper treatment does not create a constitutional claim."  Chance, 143 F.3d at 703.  Because no reasonable jury could conclude that Defendants were deliberately indifferent to a sufficiently serious medical need this Court grants summary judgment to Defendants with respect to Plaintiff's claims for denial of medical treatment for the lump in his chest.

### 2.    Count Two: Denial of Dental Treatment

Defendants argue that Plaintiff waived this claim and that the Court should dismiss it based on the following exchange with Plaintiff at deposition:

> Q. All right.  Now, you also had a claim about your dental care.
> Since April 2000, you weren't able to get your teeth cleaned
> properly or get floss?

A. No.

Q. Who's responsible for that?

A. It was the policy.  If you are in S.H.U., you were canceling your dinner and they didn't want to take me over there after I grieved it.  I don't know whose position it is to see about this. That was cured actually by grieving it, and in regard to that claim, I don't think I'll be pursuing that claim.  I think I'll be waiving that claim.

(Longo Declaration, Ex. A, Docket No. 45, 30:24 - 31:14).  Plaintiff provides no evidence to support this claim and makes no opposition to Defendants' argument that he has waived this claim.  Accordingly, this Court grants summary judgment to Defendants with respect to Plaintiff's claim that Defendants denied him dental treatment.  *See* Singleton v. City of Newburgh, 1 F. Supp. 2d 306, 312 (S.D.N.Y. 1998) (deeming plaintiff's claim "abandoned" and granting defendants' summary judgment where claim was alleged in the complaint but "not raised elsewhere in the record").

### 3.      Count Three: Cruel and Unusual Punishment

#### a.      *Denial of Medical Treatment in the Drug Watch Cell*

Plaintiff's claim that Defendants placed him in a drug watch cell for 48 hours because of his bleeding penis and denied him medical  treatment largely reiterates his claim under Count One for denial of medical treatment and is similarly without merit for the reasons stated above.  Defendants Laskowski and Turton visited Plaintiff during the 48 hours he spent in the drug watch cell.  Turton offered to examine Plaintiff, but Plaintiff declined.  Accordingly, this Court grants summary judgment to Defendants on that aspect of Count Three that restates his claim under Count One for denial of medical treatment because no reasonable jury could conclude that Defendants were deliberately indifferent

to a sufficiently serious medical need

      **b.**    ***Conditions in the Drug Watch Cell***

Count Three also contains allegations that Plaintiff's drug watch cell was smeared in feces and that Defendants denied Plaintiff a toothbrush and water for bathing during the 48 hours that he spent in the cell.  Plaintiff argues that Defendant Bea admitted to these conditions and that the "placement in an isolation cell in very unclean conditions violates the Eighth Amendment."  (Memorandum in Support of Plaintiff's Motion for Partial Summary Judgement, Docket No. 50, p. 6).  Defendants respond that Plaintiff is misconstruing Bea's interrogatory response, which states:

> I do not recall the date, but inmate Hamilton did claim that he had been deprived of toiletries following use of the bed pan. I spoke to the officers assigned to the area and the area supervisor to ensure proper amenities.  I was told that the amenities were provided to but refused by inmate Hamilton. I heard no further complaints from Hamilton.

(Docket No. 35, ¶ 7).  Even accepting Plaintiff's version of events as true, Defendants denial of a toothbrush and water for bathing to Plaintiff for 48 hours is *de minimus* and fails to rise to the level of a constitutional violation because briefly denying hygienic materials does not violate contemporary standards of decency.  *See* Beckford v. Portuondo, 151 F. Supp. 2d 204, 210 (N.D.N.Y. 2001) (holding denial of shower rights for one day does not violate the Eighth Amendment); Chapple v.. Coughlin, 92-CV-8629, 1996 WL 507323, at *2 (S.D.N.Y. Sept. 5, 1996) (denial of shower and recreation for three days did not amount to an Eighth Amendment violation)*; accord* Markiewicz v. Washington, 175 F.3d 1020  (7th Cir. March 25, 1999) (holding that prison official's refusal to allow a prisoner access to two showers did not state a claim of unconstitutional prison conditions); Cosby v. Purkett, 782

17

F.Supp. 1324, 1329 (E.D.Mo.1992) (holding that when a prisoner is allowed to shower once every seventy-two hours, the Eighth Amendment is not violated).   Plaintiff also provides no evidence to support his allegation that the cell was unclean and contained feces.   Accordingly, this Court grants summary judgment to Defendants on Plaintiff's claim under Count Three concerning conditions in the drug watch cell because no reasonable jury could find that conditions in the drug watch cell violate contemporary standards of decency.

### c.      *Claims regarding Defendants' Bathroom Policy*

This Court also considers Plaintiff's remaining claims against Conway, James, Bea, and Markowski under Count Three concerning the bathroom policy.   Plaintiff claims that Defendants' enforcement of the bathroom policy prevented him from having immediate access to the bathroom.   Defendants argue that Plaintiff admitted that his claims against Conway and James are solely for setting the policy.   (See Longo Declaration, Docket No. 45, Ex. A, 57:24-58:10).   However, as indicated by Conway's interrogatory responses and exhibits, the policies Plaintiff complains about were set by DOCS and not Conway and James.   (See Docket No. 27, ¶¶ 20, 21, Ex. C, D).   Plaintiff does not contest that the policies were set by DOCS.   Therefore, because Plaintiff has failed to allege that Conway and James were personally involved in setting this policy, his claims against them must be dismissed.   *See* Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)   ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."); *see also* MacDonald v. Angelone, 69 F. Supp. 2d 787, 791-92 (E.D. Va. 1999)   (dismissing claim against Director of Virginia Department of

Corrections because there was no showing that he had any personal involvement in the promulgation of the challenged policy).

To the extent that Plaintiff claims Defendants were deliberately indifferent to his medical needs in enforcing the bathroom policy, Plaintiff has failed to demonstrate that Defendants were aware of his urological condition[12] or that they acted culpably by intentionally delaying his use of the bathroom.  Accordingly, this Court grants summary judgment to Defendants on that aspect of Count Three that raises claims related to Defendants enforcement of the bathroom policy.

### 4.      Count Four: Denial of Recreation

In the Complaint, Plaintiff alleges that Defendants Bea and Conway ran recreation at the same time that inmates received hot breakfast and legal mail.  Plaintiff alleges that this forced him to choose whether to go to recreation or receive a <u>hot</u> breakfast and legal mail.

Plaintiff's claim concerning hot breakfast fails to state a violation of the Eighth Amendment, which requires that prisoners be served "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."  <u>Robles v. Coughlin</u>, 725 F.2d 12, 15 (2d Cir. 1983).  At his deposition, Plaintiff admitted that he still received food if he went to recreation, but that if he ordered hot food, it would be cold by the time he returned. (See Longo Declaration, Ex. A, Docket No. 45, 9:6-9:25).  Denial of hot meals does not create a constitutional violation.  <em>See</em> <u>Hoitt v. Vitek</u>, 497 F.2d 598, 601 (1st Cir. 1974) ("deprivation

---

[12] James denied having knowledge of Plaintiff's urological condition in his response to plaintiff's Interrogatories. (See James Interrogatory Response, Docket No. 18, ¶ 8).

of hot meals  . . . fails to state a claim of cruel and unusual punishment, given the stipulation that three meals were provided daily . . . ."); <u>Cosby v. Purkett</u>, 782 F. Supp. 1324, 1329 (E.D. Mo. 1992) ("As for cold food, even if food was served cold from time to time, allegations of denial of hot meals do not state a cognizable claim, if prisoners are adequately fed.").

Plaintiff also fails to support his contention that he had to choose between going to recreation and receiving legal mail.  Defendants' records show that Plaintiff signed for legal mail 132 times during the relevant period, including on 26 days when he also went to recreation.  (See Prusak Declaration, Docket No. 46, Exs. A, C).  Given this record, no reasonable jury could find that Plaintiff was deprived of recreation or access to legal mail in violation of the Eighth Amendment.

Plaintiff's claim that his health suffered from missing recreation is also wholly without merit.  Defendants' records show that Plaintiff attended recreation 96 times during the relevant period.  Plaintiff also provides no evidence to support his contention of declining health.  Because no reasonable jury could find that Plaintiff was deprived of recreation, meals, or access to legal mail in violation of the Eighth Amendment, this Court grants summary judgment to Defendants on all claims raised under Count Four of Plaintiff's Amended Complaint.

### 5.    Count Five: Denial of Right to Religion and Right to Privacy

Defendants argue that Plaintiff's privacy and religious claims should be dismissed because Defendants had no involvement in setting the challenged policies.   In the alternative, Defendants argue that they are entitled to qualified immunity as to these claims.  While Plaintiff moves for summary judgment on these claims, he advances no

20

arguments in support of his position.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Here, Plaintiff asserts liability against Defendants for the lack of privacy in the showers and drug watch cell and for allowing females to view him while in the showers and cell.  However, Plaintiff fails to allege and provides no evidence to suggest that Defendants were personally involved in creating the conditions and procedures to which he objects. Similarly, Plaintiff asserts claims against Defendants for "designating [the location of] the drug watch cell . . . in a high traffic area," but he presents no evidence that Defendants had any influence in the location of the cell.  Plaintiff also provides no evidence to support his speculation that female employees were watching him through the video cameras in violation of his religious views.

Even if Plaintiff could show that Defendants were personally involved in creating the conditions and procedures and that the conditions and procedures violate a constitutional right, Defendants would be protected by qualified immunity.  Defendants are protected from § 1983 liability on the basis of qualified immunity if their actions (1) did not violate clearly established law or (2) it was objectively reasonable for the officials to believe that their actions did not violate the law.  See Warren v. Keane, 196 F.3d 330, 332 (2d Cir. 1999).

Existing decisions are inconsistent on whether allowing prison employees to view prisoners using showers and bathrooms under similar conditions is a constitutional

violation.  *See, e.g.,* Baker v. Welch, 2003 WL 22901051, *18 (S.D.N.Y. 2003) (noting that

close observation by a female officer of a male prisoner urinating for a urine test could

violate the Constitution, but granting summary judgment to defendants on qualified

immunity grounds); Rogers v. Clark, 94-CV-0444E, 1996 WL 328218 (W.D.N.Y. 1996)

(holding that a female corrections officer's glance at a showering male prisoner did not

present a constitutional injury and that "[b]ashfulness is not a protectable fundamental right

or liberty interest."); *and* Dawson v. Kendrick, 527 F. Supp. 1252, 1316 (S.D.W.Va. 1981)

(holding that prison violated female inmates' rights when it enabled male inmates and

prison staff to peer into female inmates' cells and view them undressing or using toilets);

*see also* MacDonald v. Angelone, 69 F. Supp. 2d 787, 793 (E.D. Va. 1999) (attributing the

differing results in similar cases to the close factual analysis that occurs when courts

balance prisoners' limited privacy right and prison officials' security responsibility).

Furthermore, in Johnson v. Phelan, 69 F.3d 144 (7th Cir. 1995), the United States Court

of Appeals for the Seventh Circuit concluded that Supreme Court precedent does not allow

for any right to privacy for prisoners:

> [In Bell v. Wolfish, 441 U.S. 520, 99 S. Ct. 1861, 60 L.Ed.2d
> 447 (1979), the Supreme Court] assumed without deciding that
> prisoners retain some right of privacy under the fourth
> amendment.  Five years later the Court held that they do not.
> Hudson v. Palmer, 468 U.S. 517, 526-30, 104 S.Ct. 3194,
> 3200-02, 82 L.Ed.2d 393 (1984), observes that privacy is the
> thing most surely extinguished by a judgment committing
> someone to prison. Guards take control of where and how
> prisoners live; they do not retain any right of seclusion or
> secrecy against their captors, who are entitled to watch and
> regulate every detail of daily life. After Wolfish and Hudson
> monitoring of naked prisoners is not only permissible-wardens
> are entitled to take precautions against drugs and weapons
> (which can be passed through the alimentary canal or hidden
> in the rectal cavity and collected from a toilet bowl)-but also

> sometimes mandatory. Inter-prisoner violence is endemic, so constant vigilance without regard to the state of the prisoners' dress is essential. Vigilance over showers, vigilance over cells-vigilance everywhere, which means that guards gaze upon naked inmates.

Id. at 146.  This Court cites these cases not in any attempt to resolve the inherent tension, but rather to highlight that there is no clearly established law in this area.  While cases outside of the Seventh Circuit generally suggest that prisoners have a limited right to privacy, it is rarely found to be violated and Plaintiff's claims here clearly do not qualify. However, even assuming that Plaintiff has a constitutional right to privacy in these circumstances, Defendants would be entitled to qualified immunity because there is no clearly established law.  Accordingly, this Court grants summary judgment to Defendants on all claims raised under Count Five of Plaintiff's Amended Complaint.

### 6.    Count Six: Denial of Mental Health Treatment

Plaintiff's complaint about his mental health treatment, including his belief that he should have received group counseling or treatment by a psychiatrist, is unsupported by the record.  Defendants mental health records show that numerous mental health employees, including Defendant Barton, screened Plaintiff and concluded that he did not require further treatment.  (See Barton Interrogatory Responses, Ex. B, Docket No. 50-12). Plaintiff provides no support beyond his own view that his treatment was deficient or that he was entitled to different treatment.

At bottom, Plaintiff's complaint is that he did not receive the level and form of care that he personally deemed appropriate.  Plaintiff's preference for different treatment, however, does not raise a constitutional issue.  As noted by the Second Circuit, "it is well-established that mere disagreement over the proper treatment does not create a

constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Armstrong, 143 F.3d at 703.

With respect to Plaintiff's claims against Defendants Barten, Bea, Clair, Conway, and James regarding the conditions in the SHU, Plaintiff provides affidavits and cites to numerous cases in support of his motion for summary judgment. Plaintiff provides five affidavits from inmates all of which describe conditions in the SHU in essentially the same manner as plaintiff– excessively loud with inmates throwing feces into cells.[13]

To support his argument that excessive noise and unsanitary conditions violate the Eighth Amendment, Plaintiff cites to a string of cases including McClary v. Kelly, 4 F. Supp. 2d 195 (W.D.N.Y. 1998), which he alleges "best describe[s] the conditions [he] suffered while [in the SHU]". (Memorandum in Support of Plaintiff's Motion for Partial Summary Judgement, Docket No. 50, p. 3-4). In McClary, the Court conducted extensive fact-finding and concluded that conditions in the SHU–including loud noise and inmates throwing feces–constituted an "atypical and significant" hardship on the plaintiff. Id. at 204, 206-07, 213. The court also cautioned that its holding "is limited to the particular facts involving [the plaintiff]." Id. at 213. While this Court agrees that the conditions in McClary bear some similarity to the conditions that Plaintiff complains of here, McClary focused on a due process claim and the Court made conclusions only after extensive fact-finding. Each of the other cases cited by Plaintiff also involved extensive fact-finding well beyond what is currently available in this case.

---

[13] While Plaintiff provides five inmate affidavits, only one of the affidavits is notarized and is, therefore, properly before this Court.

Plaintiff also claims that he should be granted summary judgment because Defendants Barten, Clair, Conway, and James admitted to the SHU conditions he described. (Hamilton Declaration, Docket No. 50, ¶ 6).  The record demonstrates that Defendants admit to some instances of loud noise and inmates' throwing feces. (See, e.g., Conway Interrogatory Response, Docket No. 20, ¶¶ 6-7).  However, while Defendants admit the existence of these conditions, they do not admit to the same level of continuous noise and unsanitary conditions to which Plaintiff complains.  For instance, Defendant James explicitly denies that these conditions are a regular occurrence. (James Interrogatory Response, Docket No. 18, ¶ 10).  As the parties dispute the extent to which Plaintiff was subjected to such conditions in the SHU, summary judgment is accordingly denied as to this aspect of Count Six.  However, as there is no allegation that Barten and Clair, both mental health workers, were personally responsible for these conditions, this claim is dismissed as alleged against them.  In addition, as Conway is the Director of Attica and is not alleged to have been personally involved in subjecting Plaintiff to these conditions, this claim is also dismissed as alleged against him.  Therefore, Plaintiff's claim under Count Six regarding conditions in the SHU survives summary judgment only as alleged against Defendants Bea and James.

This Court has considered the parties' other arguments and finds them to be unavailing.


## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motions to Compel are denied and Defendants'

Motion for Summary Judgment is granted in part and denied in part in accordance with the opinion above. Specifically, the claims that remain are as follows:

Plaintiff's claim against Bauer and Pierce for use of excessive force under Count Three.
Plaintiff's claims against Bea and James under Count Six relating to conditions in the SHU.


## V. ORDER

IT HEREBY IS ORDERED, that Plaintiff's Motions to Compel (Docket Nos. 41, 54) are denied.

FURTHER, that Defendants' Motion for Partial Summary Judgment (Docket No. 44) is granted in part and denied in part.

FURTHER, that Plaintiff's Motion for Partial Summary Judgment (Docket No. 50) is denied.

FURTHER, that the Clerk of the Court shall terminate Brian Baker[14], Bruce Barten, Scott Clair, James Conway, Stephen Laskowski, Sergeant Markowski[15], Ray Pierce[16],

---

[14]  Defendant Baker's first name is not included in the Docket heading.  Defendant's Answer to the Second Amended Complaint states that his first name is "Brian."  (Docket No. 7, p. 1).

[15]  Defendant Markowski's first name is not stated in the record before this Court.

[16]  Defendant Pierce's first name is not included in the Docket heading.  Defendant's Answer to the Second Amended Complaint states that his first name is "Ray."  (Docket No. 7, p. 1).

Anthony Polak[17], and Cathie Turton[18] as Defendants to this action.

     SO ORDERED.


Dated:   January 23, 2008
       Buffalo, New York



                    /s/William M. Skretny
                    WILLIAM M. SKRETNY
                  United States District Judge

---

[17]   Defendant Polak's first name is not included in the Docket heading.  Defendant's Answer to the Second Amended Complaint states that his first name is "Anthony."  (Docket No. 7, p. 1).

[18] Defendant Turton's first name is incorrectly spelled "Cathy" in the Docket heading and in numerous documents.  Her Response to Plaintiff's Interrogatories (Docket No. 19, p. 1, 7) indicates that her name is spelled  "Cathie."